UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

FILED
DEC 11 2025
Clerk, U.S. District Court
Texas Eastern

| | | |
|---|---|---|
| JAYLA CALLIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 6:25-cv-501 LWG |
| | ) | |
| ASPIRE LAW GROUP PLLC, a Michigan Professional Limited Liability Company, | ) | |
| | ) | |
| Defendant. | ) | |

PLAINTIFF'S COMPLAINT FOR DAMAGES AND JURY DEMAND

Comes now Plaintiff, Jayla Callier, with her Complaint for Damages and Jury Demand against Aspire Law Group PLLC, and states as follows:

PARTIES

1. Plaintiff JAYLA CALLIER ("Plaintiff") is and at all material times was, a natural person, resident of the Eastern District of Texas, and was present in Texas for all texts messages, in this case in Smith County, Texas.

2. Defendant ASPIRE LAW GROUP PLLC ("Aspire" or "Defendant") is a professional limited liability company organized and existing under the laws of Michigan can be served via registered agent Stuart M. Dorf, 275 E. Jefferson Avenue, Suite 400, Detroit, Michigan 48207.

JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over Plaintiff's

TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). *LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101 because it arises from the same nucleus of operative fact, i.e., Defendant's telemarketing robocalls to Plaintiff; adds little complexity to the case.

4. This Court has specific personal jurisdiction over Defendant because at all relevant times, Defendant conducted business in Texas, solicited business in Texas, engaged in persistent course of conduct in Texas. Defendant purposefully availed itself to the State of Texas and to this District, and there is a sufficient relationship between Defendant's purposeful contacts with Texas and the litigation. Defendant purposefully sent callss into Texas despite having no business relationship with Plaintiff.

a. Defendant target Texas when marketing merchant cash advance loans and regularly conduct business in this District, including telephone solicitation.

b. The purposeful calls to Texas injured Plaintiff in Texas, creating a causal link among Defendant, the forum, and the litigation exceeding the non-causal affiliation sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because

a substantial part of the events giving rise to the claims—the text and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. He was residing in the Western District of Texas when he received a substantial, if not every call from Defendant, which is the subject matter of this lawsuit.

6. This Court has venue over Defendant because the calls at issue were sent by or on behalf of the above-named Defendant to Plaintiff, a Texas resident.

THE TELEPHONE CONSUMER PROTECTION ACT

OF 1991, 47 U.S.C. § 227

7. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these texts were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

8. The TCPA makes it unlawful "to make any text (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

9. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without

the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

10. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

11. Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

13. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and

conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

16. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

19. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No.

10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## TEXAS BUSINESS AND COMMERCE CODE

20. A telephone solicitor may not make a consumer telephone call to a consumer unless the telephone solicitor, immediately after making contact with the consumer to whom the call is made, identifies himself or herself by name, the business on whose behalf the telephone solicitor is calling and the purpose of the call. TBCC § 301.051(b)(A-C).

21. A person who knowingly violates this chapter is liable for a civil penalty of not more than $10,000 for each violation. TBCC § 301.103(a).

22. A consumer injured by a violation of this chapter may bring an action for recovery of damages. TBCC § 301.104.

23. Venue for an action brought under this chapter is in the county in which the consumer telephone call was received. TBCC § 301.105(2).

24. Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate

for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

25. Under Texas Business and Commerce Code § 302.302(a) Plaintiff is entitled to seek damages of up to $5000 per violation under §302.101.

26. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

27. A person may not make a telephone call or use an automatic dial announcing device to make a telephone call for the purpose of making a sale if the person making the call or using the device knows or should have known that the called number is a mobile telephone for which the called person will be charged for that specific call. Tex. Bus. & Com. Code § 305.001(1).

28. A person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in this state against the person who originates the communication damages in the amount provided by this section. Tex. Bus. & Com. Code § 305.053(a)(2).

29. A plaintiff who prevails in an action for damages under this section is entitled to the greater of $500 for each violation or the plaintiff's actual damages. Tex. Bus. & Com. Code § 305.053(b)(1-2).

30. If the court finds that the defendant committed the violation knowingly or

intentionally, the court may increase the amount of the award of damages under Subsection (b) to not more than the greater of $1,500 for each violation or three times the plaintiff's actual damages. Tex. Bus. & Com. Code § 305.053(c)(1-2).

31. The fact that a claimant has recovered under a private action arising from a violation of this chapter more than once may not limit recovery in a future legal proceeding in any manner. Tex. Bus. & Com. Code § 305.055).

## CIVIL LIABLITY FOR PROHIBITED BARRATRY

32. Barratry is the solicitation of employment to prosecute or defend a claim with the intent to obtain a personal benefit. *State Bar of Tex. V. Kilpatrick*, 874 S. W.2d 656, 658 n.2 (Tex.1994).

33. Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct, entitled "Prohibited Solicitations and Payments."

34. Rule 7.03 provides, in relevant part, as follows:

a. A lawyer shall not by in-person contact, or by regulated telephone or other electronic contact as defined in paragraph (f) seek professional employment concerning a matter arising out of a particular occurrence or event, or series of occurrences or events, from a prospective client or nonclient who has not sought the lawyer's advice regarding employment or with whom the lawyer has no family or past or present attorney-client relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain....

b. As used in paragraph (a), "regulated telephone or other electronic

contact" means any electronic communication initiated by a lawyer or by any person acting on behalf of a lawyer or law firm that will result in the person contacted communicating in a live, interactive manner with any other person by telephone or other electronic means. Id. R. 7.03(a), (f).

35. A lawyer shall not send, or deliver, or knowingly cause another person to send, deliver, or transmit, a communication that involves coercion, duress, overreaching, intimidation, or undue influence.

## FACTUAL ALLEGATIONS
## COMMON TO ALL CALIMS FOR RELIEF

36. Plaintiff's privacy and cell phone have been invaded by the non-emergency prerecorded telemarketing by Defendant.

37. Defendant is a law firm owned by attorney Stuart M. Dorf "Dorf", an attorney admitted and in good standing in Michigan.

38. Dorf is not admitted in Texas and cannot legally represent Texas clients.

39. Aspire Law Group, PLLC is not admitted in Texas and cannot legally represent Texas residents.

40. Dorf and Aspire Law Group, PLLC solicited Texas residents despite not being admitted to practice law in Texas.

41. Defendant routinely violates the TCPA as a part of its business model and knowingly and willfully commit TCPA violations for their financial gain.

42. Plaintiff has been overwhelmed by an incessant influx of pre-recorded phone calls marketing debt relief and loan services.

43. Plaintiff received at least six (6) prerecorded voice message calls from Defendant to her personal cell phone soliciting business loans.

44. The calls were robotic in nature and contained a non-human monotone sounding voice. Some of the voicemails instructed Plaintiff to "Press" a button in order to opt out or to be connected.

45. Each of the phone calls listed herein falsely identified the company making the phone call and failed to properly identify the company making the phone.

46. On March 3, 2025, Plaintiff received a ringless prerecorded voicemail that deposited a message on Plaintiff's cellular phone. The voicemail came from 914-504-9152 and solicited Plaintiff for a "Consolidation loan up to $84,000" with "monthly payments as low as $600."

47. On September 29, 2025, at 1:221 PM, Plaintiff called phone number 914-504-9152 as part of an investigation into the origin of the phone calls.

48. Plaintiff was emailed a "Retainer Package" agreement from Aspire Law while Plaintiff was still on the phone with Defendant. The email was sent from radams@alliantsolutionsgroup.com.

49. On March 5, 2025, Plaintiff received a ringless prerecorded voicemail from 980-509-6581 that deposited a message on Plaintiff's cellular phone. The voicemail instructed Plaintiff to call 866-705-6003 for assistance with a consumer loan.

50. On March 10, 2025, Plaintiff received a ringless voicemail from 516-875-0478 that instructed Plaintiff to call 877-201-1356 for "$55,000 loan with monthly payments of $400.

51. On September 29, 2025, at 3:22 PM, Plaintiff called phone number 866-705-6003 as part of an investigation into the origin of the phone calls.

52. Plaintiff was connected to Defendant's agent who solicited Plaintiff for debt relief services. Defendant emailed Plaintiff a "Retainer Package" agreement from Aspire Law while Plaintiff was still on the phone with Defendant. The email was sent from rsmith@alliantsolutiongroup.com.

53. On March 10, 2025, Plaintiff received a ringless prerecorded voicemail from 401-666-2098 that deposited a message on Plaintiff's cellular phone. The voicemail instructed Plaintiff to call 888-324-9086 for assistance with a consumer loan.

54. On September 29, 2025, at 2:11 PM, Plaintiff called 888-324-9086 as part of an investigation into the origin of the prerecorded phone calls.

55. Plaintiff was connected to Defendant's agent who solicited Plaintiff for debt relief services. Defendant emailed Plaintiff a "Retainer Package" agreement from Aspire Law while Plaintiff was still on the phone with Defendant. rsmith@alliantsolutionsgroup.com.

56. On April 2, 2025, Plaintiff received a prerecorded message from Defendant instructing Plaintiff to call 866-457-0072 for a "prequalified personal loan offer of $79,000." The call came from phone number 516-774-9491.

57. On September 29, 2025, Plaintiff called 866-457-0072 as part of an investigation into the origin of the phone call. Plaintiff was connected to an agent of Defendant who informed Plaintiff they had already talked to her and hung up the phone.

58. On March 13, 2025, Plaintiff received a ringless voicemail from 516-966-9055 that instructed Plaintiff to call 877-201-1356 for "$60,000 loan with monthly payments of $400.

59. On September 30, 2025, Plaintiff called 877-201-1356 as part of an investigation into the origins of the phone calls. Plaintiff was connected to Defendant's agent who sent Plaintiff a "Retainer Package" agreement from Aspire Law while Plaintiff was still on the phone with Defendant. The email came from jgeorge@reliantsolutiongroup.com.

60. Each of the calls were a solicitation for business loans.

61. Plaintiff did not have a preexisting business relationship with Defendant.

62. Defendant did not have Plaintiff's consent to send any of the phone calls at issue in this Complaint.

63. Table below displays the unsolicited phone calls made to Plaintiff by Defendant.

| Date | Event | From Number | Description/Notes |
|---|---|---|---|
| 3/3/2025 | Ringless prerecorded voicemail received | 914-504-9152 | Solicited 'Consolidation loan up to $34,000' with 'monthly payments as low as $600.' |
| 3/5/2025 | Ringless prerecorded voicemail received | 980-509-6581 | Voicemail instructed to call for assistance with a consumer loan. |
| 3/10/2025 | Ringless prerecorded voicemail received | 401-666-2098 | Voicemail instructed to call for assistance with a consumer loan. |
| 3/10/2025 | Ringless prerecorded voicemail received | 401-666-2098 | Voicemail instructed to call for assistance with a consumer loan. |
| 3/13/2025 | Ringless prerecorded voicemail received | 516-966-9055 | Message: '$60,000 loan with monthly payments of $400.' |
| 4/2/2025 | Prerecorded marketing call received | 516-774-9491 | Message: 'prequalified personal loan offer of $79,000.' |

64. Defendant's unsolicited prerecorded phone calls caused Plaintiff to become aggravated and annoyed, and resulted in Plaintiff having to spend hours attempting to uncover the identity of the anonymous telemarketers.

65. No emergency necessitated any of these prerecorded phone calls.

66. Each one of the phone calls at issue in this Complaint was a prerecorded

voice message call soliciting consumer loans and/or debt relief.

67. On September 29, 2025, Plaintiff searched the Texas Secretary of State website at https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp and did not find a valid Telephone Solicitation Registration for Defendant.

68. Each of the phone calls at issue was made without a valid Texas Telephone Solicitation Registration Certificate.

**TEXAS BUSINESS AND COMMERCE CODE 302.101**

69. Defendant initiated the calls alleged herein and is a "seller" under the Texas Business and Commerce Code ("TBCC") because it makes telephone solicitation on its own behalf and called Plaintiff in this case.

70. "' Telephone solicitation' means a ***telephone call*** a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item." (emphasis added) Tex. Bus. Com. Code § 302.002.

71. Telephone call is defined as "a call or other transmission made to or received at a telephone number, including a call or other transmission, ***including a transmission or a text or graphic message of an image***, to a mobile telephone number." (emphasis added) Tex. Bus. Com. Code § 304.002(C).

72. "A person makes a telephone solicitation if the person effects or attempts to effect a telephone solicitation." Tex. Bus. & Com. Code § 302.002.

73. A "salesperson" is defined as "A person who is employed or authorized by a seller to make a telephone solicitation." Tex. Bus. & Com. Code §302.001(4).

74. Federal common law principles of agency apply to TBCC violations...and

the conduct of the telemarketer who makes the calls can be imputed to the seller if the telemarketer is an agent of the seller. *Guadian v. Progressive Debt Relief, LLC*, No. EP-23-cv-235, 2023 WL 7393129, at *4 (W.D. Tex. Nov. 8, 2023); *see also Callier v. Tip Top Cap. Inc.*, No. EP-23-cv-437, 2024 WL 1637535, at *3 (W.D. Tex. Apr. 16, 2024) (holding that a seller violates § 302.101 when a telemarketer makes calls on behalf of a seller who does not hold a registration certificate); *Forteza v. Pelican Inv. Holdings Grp., LLC*, No. 23-cv-401, 2023 WL 9199001, at *6 (E.D. Tex. Dec. 27, 2023) (same); *Salaiz v. Beyond Fin., LLC*, No. EP-23-cv-6, 2023 WL 6053742, at *5 (W.D. Tex. Sept. 18, 2023) (refusing to dismiss a § 302.101 claim because "Plaintiff has plausibly alleged that Defendant effected or attempted to effect the thirteen calls Plaintiff received by hiring telemarketers to make those calls.")

75. The Plaintiff may seek damages of violations of Texas Business and Commerce Code § 302.101 of to $5,000.00 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees. Tex. Bus. & Com. Code §§ 302.302(a), 302.302(d).

76. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

77. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex.

Bus. & Com. Code § 17.50.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES AS A RESULT OF THE TEXTS

78. Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

79. Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

80. Defendant's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

81. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

## PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

82. The calls were sent to Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff does not have a landline at his home and uses the cell phone to listen to music, talk to friends and family, surf the internet, time food when cooking, navigation, and other non-business uses of his cell phone.

## FIRST CLAIM FOR RELIEF
## (Violation of 47 U.S.C. § 227(b)
## Artificial of Prerecorded Voice

83. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-81.

84. Defendant placed six (6) non-emergency prerecorded phone calls to Plaintiff without Plaintiff's prior express written consent.

85. The phone calls resulted in a prerecorded voice message being deposited

into Plaintiff's voicemail. The voice message contained a prerecorded voice message as proscribed by 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B).

86. Plaintiff is entitled to an award of up to $500 in damages for each violation under 47 U.S.C. § 227(b)(3)(B).

87. Defendant made the violating calls "willfully" and/or "knowingly" under 47 U.S.C. § 227(b)(3)(C).

88. If the Court finds that Defendant willfully and/or knowingly violated this subsection, the court may increase the civil penalty from $500 to $1,500 per violation under U.S.C. § 227(b)(3)(C).

## SECOND CLAIM FOR RELIEF

### Violation of Texas Business and Commerce Code 305.053 Pursuant to 47 U.S.C. 227(b)

89. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-87.

90. A person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in this state against the person who originates the communication damages in the amount provided by this section. Tex. Bus. & Com. Code § 305.053(a)(2).

91. Defendant made at least six (6) prerecorded phone calls to Plaintiff's cell phone in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and therefore violated Texas Business and Commerce Code 305.053.

92. A plaintiff who prevails in an action for damages under this section is

entitled to the greater of $500 for each violation or the plaintiff's actual damages. Tex. Bus. & Com. Code § 305.053(b)(1-2).

93. The fact that a claimant has recovered under a private action arising from a violation of this chapter more than once may not limit recovery in a future legal proceeding in any manner. Tex. Bus. & Com. Code § 305.055.

## THIRD CLAIM FOR RELIEF
## Violation of Texas Business and Commerce Code 302.101
## Failure to Obtain a Telephone Solicitation Registration Certificate

94. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-92.

95. The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 302.101, by making six (6) non- registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent

96. Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. Texas Business and Commerce Code 302.302(a).

97. Plaintiff is entitled to an award of all reasonable costs of prosecuting the action including court costs, investigation costs, deposition expenses, witness fees, and attorney's fees. Texas Business and Commerce Code 302.302(d).

## FOURTH CLAIM FOR RELIEF
## VIOLATION OF 82.0651 CILIL LIABILITY FOR PROHIBITED BARRATRY

98. Plaintiff incorporates the preceding paragraphs 1-96 as if fully set forth herein.

99. Barratry is the solicitation of employment to prosecute or defend a claim

with the intent to obtain a personal benefit. *State Bar of Tex. V. Kilpatrick*, 874 S. W.2d 656, 658 n.2 (Tex.1994).

100. Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct, entitled "Prohibited Solicitations and Payments."

101. Rule 7.03 provides, in relevant part, as follows:

a. A lawyer shall not by in-person contact, or by regulated telephone or other electronic contact as defined in paragraph (f) seek professional employment concerning a matter arising out of a particular occurrence or event, or series of occurrences or events, from a prospective client or nonclient who has not sought the lawyer's advice regarding employment or with whom the lawyer has no family or past or present attorney-client relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain...

b. As used in paragraph (a), "regulated telephone or other electronic contact" means any electronic communication initiated by a lawyer or by any person acting on behalf of a lawyer or law firm that will result in the person contacted communicating in a live, interactive manner with any other person by telephone or other electronic means. Id. R. 7.03(a), (f).

102. A lawyer shall not send, or deliver, or knowingly cause another person to send, deliver, or transmit, a communication that involves coercion, duress, overreaching, intimidation, or undue influence.

103. Plaintiff did not initiate communication with Defendant.

104. Plaintiff was targeted by Defendant despite not having a preexisting relationship with Defendant.

105. Defendant's conduct violated at least Section 38.12(b) of the Penal Code and Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct.

106. Plaintiff was solicited by Defendant so that Defendant would benefit financially.

107. Defendant knew or should have known that its authorization to tele-solicit clients was in violation of Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct and Section 38.12(b) of the Texas Penal Code.

108. A person commits an offense if, with intent to obtain an economic benefit the person solicits employment, either in person or by telephone, for himself, or for another. Penal Code Section 38.12(a)(2).

109. A person commits an offense if, with intent to obtain an economic benefit the person pays, or gives of offers to pay or give a person money or anything of value to solicit employment. Penal Code Section 38.12(a)(4).

110. Defendant violated Texas Penal Code to § 38.12 when it solicited employment for itself by telephone to obtain economic benefit. Penal Code 38.12(a)(2) Barratry and Solicitation of Professional Employment.

111. A person who was solicited by conduct violating Section 38.12 (Barratry and Solicitation of Professional Employment) (a) or (b), Penal Code, or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas,

regarding barratry by attorneys or other persons, but who did not enter into a contract as a result of that conduct, may file a civil action against any person who committed barratry.

112. A person who prevails under Subsection (c) shall recover from each person who engaged in barratry: (1) A penalty in the amount of $50,000; (2) actual damages caused by the prohibited conduct; and (3) reasonable and necessary attorney's fees.

**FIFTH CLAIM FOR RELIEF**
**Violation of Texas Business and Commerce Code 301.051(b)(A-C)**
**Failure to Properly Identify the Business on Whose Behalf the Telephone Solicitor is Calling**

113. A telephone solicitor may not make a consumer telephone call to a consumer unless the telephone solicitor, immediately after making contact with the consumer to whom the call is made, identifies himself or herself by name, the business on whose behalf the telephone solicitor is calling and the purpose of the call. TBCC § 301.051(b)(A-C).

114. Defendant placed six (6) phone calls to Plaintiff in which the Defendant failed to identify the company on whose behalf the phone calls had been placed.

115. A person who knowingly violates this chapter is liable for a civil penalty of not more than $10,000 for each violation. TBCC § 301.103(a).

116. A consumer injured by a violation of this chapter my bring an action for recovery of damages. TBCC § 301.104.

117. Venue for an action brought under this chapter is in the county in which the consumer telephone call was received. TBCC § 301.105(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jayla Callier prays for judgment against the Defendant as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violated the TCPA and TBCC;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $1,500 per call in statutory damages arising from the TCPA §227(b) intentional knowing and willful violations against the corporation and individual for six (6) calls;

E. An award of $1,500 per call in statutory damages arising from the Texas Business and Commerce Code 305.053 pursuant to TCPA §227(b) intentional knowing and willful violations against the corporation and individual for six (6) calls;

F. An award of $5,000 per phone call in statutory damages arising from intentional violations of the Texas Business and Commerce Code 302.101 for six (6) calls;

G. An award of $50,000 per Defendant in statutory damages arising the Texas Penal Code § 38.12 and Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct;

H. An award of $10,000 per phone call in statutory damages arising from intentional violations of Texas Business and Commerce Code 301.051(b)(A-C) for six (6) phone calls;

I. An award to Plaintiff of damages, as allowed by law under the TCPA;

J. An award to Plaintiff of interest, costs, and attorneys' fees, as allowed by law and equity.

K. Such further relief as the Court deems necessary, just, and proper.

December 8, 2025, Respectfully submitted,

Jayla Callier
Jayla Callier
Plaintiff, Pro Se